John Paul DIXON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–95–097 CR.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 23, 1995.

Decided April 3, 1996.

John Hackbarth, Nederland, for appellant.

Tom Maness, Criminal District Attorney, John B. Ross, Assistant Criminal District Attorney, Beaumont, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

A jury convicted Dixon of possession of a controlled substance, marijuana. The jury found true two enhancement counts and assessed punishment at forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Dixon appeals on two points of error.

 In his first point, Dixon asserts the evidence was insufficient to prove possession. In reviewing a challenge of sufficiency, all of the evidence is viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found all of the elements of the charged offense to have been proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991). The standard of review for sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *Geesa,* 820 S.W.2d at 159–161; *Butler v. State,* 769 S.W.2d 234, 238 (Tex.Crim.App.1989) (overruled on other grounds).

Officer Froman and Officer LeChance were on patrol when they stopped a car for speeding. Dixon was a passenger in the car. Officer Froman approached the passenger side as Officer LeChance approached the driver's side. The driver exited his vehicle and proceed to walk towards Officer LeChance. Officer LeChance asked the driver for his license, advised him he had been

stopped for speeding and began writing a warning citation. The driver told both officers he and Dixon were going to Louisiana to visit his sick mother. Officer Froman testified Dixon was extremely nervous, his breathing was rapid, his hands were shaking and he would not make eye contact. Dixon claimed he and the driver, his cousin, were from Houston and enroute to Baton Rouge, Louisiana to visit the driver's sick sister. Dixon indicated they were going to be there for three days. Officer LeChance questioned Dixon and testified he would not look at him, could not keep still, and said they were going to visit his sick sister. Dixon, when asked, said he knew the driver's mother and she was doing fine. Officer LeChance and Officer Froman then decided to ask permission to search the car.

The driver gave consent to the search. Officer Froman testified the insurance card for the vehicle was not in the name of the driver or Dixon. Officer LeChance retrieved the keys from the ignition, opened the trunk and found two guitars and a speaker. Officer Froman asked what the speaker and guitars were for and was told by one of them that they intended to play music with them in Louisiana.[1] There was no luggage or clothes in the car. Using a screwdriver in the trunk, Officer LeChance opened the speaker and found a plastic garbage bag containing fifteen pounds of marijuana, packaged in one pound bricks. Neither Dixon nor the driver admitted to ownership of the marijuana.

▆▆▆ Dixon claims the evidence was insufficient for the jury to find he "possessed" the controlled substance. As applied to the facts of this case, the standard of review is whether any rational person could have found beyond a reasonable doubt that Dixon possessed the marijuana. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Possession is defined as "actual care, custody, control or management." TEX.PENAL CODE ANN. § 1.07(a)(28) (Vernon 1974). To prove unlawful possession of a controlled substance, "first, the State must prove that [Dixon] exercised actual care, control and manage-

ment over the contraband; and second, that [Dixon] had knowledge that the substance in his possession was contraband." *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995). At issue here is the first prong.

Dixon argues that the evidence must affirmatively link him to the contraband in such a manner and to such an extent that a reasonable inference may arise that he knew of its existence and that he exercised control over it. Dixon recognizes this link may be constructed by showing additional facts and circumstances which establish his knowledge and control over the contraband. The State responds that this court in *Eaglin v. State*, 872 S.W.2d 332 (Tex.App.—Beaumont 1994, no pet.), held "affirmative link" analysis was no longer appropriate for review of evidentiary sufficiency in circumstantial evidence cases in light of *Geesa*, and the sole standard for review is that stated in *Jackson v. Virginia*.

This court's decision in *Eaglin* was a response to the conflict among the courts of appeals as to the viability of "affirmative links" analysis.[2] The conflict arose from the Court of Criminal Appeals' decision in *Geesa*, abandoning the "outstanding reasonable hypothesis" standard. That court recently settled the conflict in *Brown v. State*, 911 S.W.2d 744, 746 (Tex.Crim.App.1995). Prior to *Geesa*, if the accused was not shown to be in exclusive control or possession of the place where the contraband was found, there must have been additional independent facts and circumstances affirmatively linking the accused to the contraband. *Deshong v. State*, 625 S.W.2d 327 (Tex.Crim.App.1981). The "outstanding reasonable hypothesis" standard provided the measure for the strength of the "affirmative links". The "affirmative links" had to be strong enough that the evidence would support no inference other than guilt of the accused. *Brown*, 911 S.W.2d at 746.

In *Brown*, the Court found that *Geesa* did not significantly compromise existing "affirmative links" case law. The court noted that

---

1. Officer Froman was unable to testify as to which man made the statement.

2. The concurring justice did not join the "affirmative link" and "alternate reasonable hypothesis" discussion. *Eaglin*, 872 S.W.2d at 338.

some precedents invoke the "outstanding reasonable hypothesis" standard and found that "any aspects of those cases which rely on that standard no longer control." *Brown,* 911 S.W.2d at 748. The court held that ultimately, "each defendant must still be affirmatively linked with the drugs he allegedly possessed, but this link need no longer be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt." *Id.*[3] In accordance with *Jackson,* therefore, the strength of the "affirmative links" must be sufficient that a rational trier of fact could find beyond a reasonable doubt that Dixon exercised actual care, custody, control or management over the contraband.

The State cites the following as circumstantial evidence that Dixon had control over the contraband: extreme nervousness, inconsistent stories regarding travel plans, absence of luggage, and a borrowed or rented vehicle. Additionally, the State places great reliance upon the experience of both officers. We do not question the considerable experience of Officers Froman and LeChance. It is obvious their instincts were correct; after properly obtaining consent to search, drugs were found. This does not answer the question, however, of whether there is sufficient evidence affirmatively linking Dixon to the drugs.

■ Dixon was not in exclusive control of the car where the drugs were found. Therefore, "we cannot conclude that he had knowledge of or control over the contraband unless the factors which we are about to discuss permit us to reasonably infer that [Dixon] did have knowledge of and control over the contraband in the [car]. *Watson v. State,* 861 S.W.2d 410, 415 (Tex.App.—Beaumont 1993, pet. ref'd), *cert. denied,* —— U.S. ——, 114 S.Ct. 1659, 128 L.Ed.2d 376 (1994). This court has recognized the following as factors which may establish the affirmative link: (1) the contraband was in plain view; (2) the accused was the owner of the car in which the contraband was found; (3) the accused was the driver of the automobile in which the

contraband was found; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found on the same side of the car seat as the accused was sitting; (6) the strong odor of marijuana was present; (7) paraphernalia to use the contraband was in view of or found on the accused; (8) the physical condition of the accused indicated recent consumption of the contraband found in the car; (9) conduct by the accused indicated a consciousness of guilt; (10) the accused had a special connection to the contraband; (11) the place where the contraband was found was enclosed; (12) occupants of the automobile gave conflicting statements about relevant matters; and (13) affirmative statements connect the accused to the contraband. *Watson,* 861 S.W.2d at 414–415; *Autran v. State,* 830 S.W.2d 807, 811 (Tex. App.—Beaumont 1992), *rev'd on other grounds,* 887 S.W.2d 31 (Tex.Crim.App.1994).

■ If the factors combine to form an affirmative link between Dixon and the contraband, only then may we infer the control element of the State's case was proven. *Watson,* 861 S.W.2d at 415. In the instant case, the only factors tending to link Dixon to the contraband consist of: (a) extreme nervousness, possibly indicating consciousness of guilt; (b) Dixon and the driver gave conflicting statements as to who they were going to visit; (c) the absence of luggage for a three-day trip; and (d) the car was borrowed. On the other hand, the factors indicating he did not have control of the contraband are not only more numerous but more convincing. Dixon did not own the car, nor was he driving it. As both officers testified, they did not even ask his permission to search the car because he was not in control of it. There is no evidence any of the trunk's contents belonged to him and no evidence Dixon had access to the trunk. There is no evidence his fingerprints were on the speaker containing the contraband or on anything in the trunk. There was no attempt by Dixon to flee the scene, no incriminating statements, and no furtive gestures. There is no evidence Dixon was under the influence of marijuana when

---

3. We recognize that *Brown* overrules that part of *Eaglin* which did away with affirmative links analysis.

stopped, no odor of marijuana, no drugs in the car, and no paraphernalia for using the contraband. In short, there is no evidence Dixon had actual care, custody, control or management over the contraband. We find the evidence insufficient to sustain the conviction. Point of error one is sustained.

The evidence being insufficient to sustain the conviction, the judgment is reversed and an acquittal ordered. *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

**REVERSED AND ACQUITTED.**

WALKER, Chief Justice, dissenting.

I respectfully dissent to the majority holding that "the evidence was insufficient to sustain the conviction."

The majority determines that there were only four factors tending to link Dixon to the contraband.

I believe a fifth factor to be most telling. Specifically, when Officer Froman asked the purpose of the guitar and the speaker, (where contraband was found), the Officer was told that "*they* intended to play music with them in Louisiana." (emphasis added)

Such is evidence of joint care, custody, control or management of the property which concealed the contraband.

I would affirm appellant's conviction.