Jaquez-L v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-171-CR

     LUIS JAQUEZ,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 203rd District Court
Dallas County, Texas
Trial Court # F94-61853-P
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Luis Jaquez was convicted, after a bench trial, of unlawful possession with intent
to distribute a controlled substance, to-wit, cocaine. The trial court found Appellant guilty and
assessed his punishment at ten years' confinement in the Texas Department of Criminal Justice,
Institutional Division, probated for 10 years.
      Appellant asserts one point of error as follows: The evidence is insufficient to support the
conviction of Appellant as a party or principal for the offense of unlawful possession with intent
to deliver cocaine.
      We overrule Appellant's point of error and affirm the judgment of the trial court.
      The following is a summary of evidence heard by the trial court: Phillip Musgrove, a patrol
officer with the Dallas Police Department, testified that on December 1, 1994, at about 4:00 p.m.
he was on duty with his partner, Officer DeLaRosa, in a marked patrol car. While on patrol,
Musgrove noticed an apparent drug transaction at 1812 North Carroll Street. While slowing the
patrol car at a stop sign, located about 100 feet from a convenience store, Musgrove saw a
Hispanic male walk to the passenger window of a car and hand the passenger in the front some
money. The passenger then handed the Hispanic male a plastic baggie containing a white powdery
substance. The Hispanic male then walked away from the car and leaned against the wall of the
convenience store next to a coke machine, about 5 feet from the car. Based upon his experience,
Musgrove believed he had just witnessed a narcotics transaction. Musgrove then drove the squad
car over to the car containing the suspected seller. The car containing the suspected seller backed
out into the street in front of the police car. Officer DeLaRosa got out of the police car and went
to the suspected seller's car while Musgrove drove the police car into the parking lot. At the same
time Musgrove got out of the police car and walked up to the suspected buyer, who did not try to
get away, but dropped something from his right hand onto the ground. The dropped item fell at
the suspected buyer's feet; whereupon, Musgrove picked it up and found it to be a baggie
containing a white, powdery substance which he believed to be cocaine. Musgrove later field-tested the white powdery substance, which tested positive for cocaine. After retrieving the
cocaine, Musgrove arrested the suspected buyer and put him in the police car. Musgrove later
learned the suspected buyer's name was Madrid.
      Musgrove then went to assist his partner at the stopped car. Officer DeLaRosa had removed
two men from the car and was performing a pat-down search on one of them. Musgrove then
performed a pat-down search on the other man. No weapons were found during the pat-downs.
      Musgrove asked the driver for identification and liability insurance. The driver did not have
any; whereupon Musgrove arrested him for traffic violations. Musgrove later learned the driver's
name was Juan Hernandez. Musgrove then arrested Appellant, the passenger in the car, and the
suspected seller of the cocaine. Hernandez and Appellant were put into another squad car that
meanwhile had arrived at the scene.
      Officer DeLaRosa performed an inventory search of the car and recovered two semi-automatic
pistols and a large quantity of drugs, both cocaine and "black-tar" heroin from under the rear seat
of the car. Some of the cocaine consisted of large chunks contained in plastic baggies. Other
cocaine was contained in capsules. The cocaine Musgrove recovered from the suspected buyer
outside the car was of the same consistency and color as that recovered from the back seat of the
car. The officers also seized currency from Hernandez and Appellant.
      Musgrove also testified that the area where the arrest occurred was known as an area where
narcotics were sold; that the car belonged to the suspect driving it (Hernandez); also that the drugs
were recovered from the passenger's side of the back seat.
      Officer DeLaRosa testified that he was on duty December 1, 1994, with his partner, Officer
Musgrove; that he (DeLaRosa) saw what appeared to be a transaction between Appellant and
another man; that he did not see an actual transfer of money, but the event appeared to him to be
a drug transaction; that Musgrove noticed the activity first and pointed it out to DeLaRosa.
      DeLaRosa further testified that Musgrove drove the police car toward the car containing the
suspected seller. The car tried to evade the police by backing into the street. The officers
activated the police lights and DeLaRosa got out of the police car and went to the driver's side of
the car. DeLaRosa ordered the two occupants from the car and handcuffed them both. He
performed a pat-down search of the men but found no weapons. DeLaRosa asked the two men
for identification. The driver produced an I.D. card, but the passenger had no identification. 
DeLaRosa identified Appellant as the passenger he arrested.
      After the arrest of Appellant and Hernandez, Officer DeLaRosa searched the interior of the
car and found two .380 caliber semi-automatic pistols, a large quantity of drugs, and money from
the two men. Appellant had $60 and Hernandez had over $200. Appellant also had some .380
caliber ammunition on his person.
      The State introduced by stipulation a report of a chemist who analyzed the drugs seized during
the arrest, which confirmed that the seized drugs consisted of cocaine and heroin.
      The Appellant presented the following evidence: Libraba Ortiz, who said she was Appellant's
cousin, said Appellant was living in her house at the time of his arrest; on December 1, 1994,
Appellant went to a nearby convenience store to buy his uncle some juice; Appellant had some
money; and Appellant took his uncle's car to make the trip to the store.
      Appellant testified he had been living with Libraba Ortiz and her husband and his aunt for two
weeks leading up to his arrest; he had recently come to this country from Mexico; on December
1, 1994, he went to the store to buy some juice for his uncle, and drove his uncle's car; he had
$60 when he went to the store; at the store he saw Juan (Appellant did not know Juan's last name);
Appellant had talked to Juan the day before about a job; Appellant was going to cut Juan's yard;
while Appellant was in Juan's car a man walked up and asked them for money so he could buy
beer; Juan and Appellant told the man they had no money; the police arrived seconds later,
arrested Appellant and handcuffed him; the police did not tell Appellant why he was arrested;
Appellant was in Juan's car about ten minutes before the police arrived; Appellant gave nothing
to the man who asked for beer money; the man gave nothing to Appellant; Appellant gave no
drugs to the man; Appellant did not know there were drugs and weapons in the car; Appellant was
paid $60 for a painting job three days before his arrest; Appellant only had sporadic jobs in the
three weeks prior to the arrest; Appellant gave no explanation for pistol bullets in his pocket.
      Appellant's sole point of error asserts the evidence is insufficient to support his conviction as
a party or principal for unlawful possession with intent to deliver cocaine.
      In reviewing the sufficiency of the evidence to support a conviction, an appellate court must
view the evidence in the light most favorable to the prosecution and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Saxton v. State, 804 S.W.2d 910,
914 (Tex. Crim. App. 1991); Butler v. State, 769 S.W.2d 234 (Tex. Crim. App. 1989). Having
reviewed the evidence in the light most favorable to the verdict, we hold the evidence is sufficient
to allow a rational trier of fact to find the essential elements of the offense beyond a reasonable
doubt as charged in the indictment.
      Appellant argues that there are no affirmative links establishing that he possessed the seized
drugs. We disagree.
      Analytical construct, under which an appellate court reviews sufficiency of evidence in cases
of circumstantial evidence to determine whether circumstantial evidence excludes every other
reasonable hypothesis other than guilt of the defendant, was rejected for further use as a method
of appellate review for evidentiary sufficiency in Geesa v. State, 820 S.W.2d 154 (Tex. Crim.
App. 1991).
      Haynes v. State, 475 S.W.2d 739, 742 (Tex. Crim. App. 1971) introduced the shorthand
expression "affirmative link" to identify what must be proven in a prosecution for possession of
illegal drugs. Under our law, an accused must not only have exercised care, control, or custody
of the illegal substance, but must also have been conscious of his connection with it and must have
known what it was. Therefore, evidence which affirmatively links him to it suffices for proof that
he possessed it knowingly. It does not matter whether this evidence is direct or circumstantial. 
Brown v. State, 911 S.W.2d 744 (Tex. Crim. App. 1995).
      Brown held that each defendant must still be affirmatively linked with the drugs he allegedly
possessed, but this link need no longer be so strong that it excludes every other reasonable
hypothesis except the defendant's guilt.
      In essence, Brown's holding is that the sufficiency of the evidence is determined by the
Jackson v. Virginia standard. In other words, Brown holds that each defendant must be
affirmatively linked with the drugs he allegedly possessed, but this link need no longer be so
strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt. 
That is to say, the affirmative link's analysis is a convenient and logically sound method of
applying the Jackson standard to determine whether, after viewing the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the essential elements of the
possession of illicit drugs beyond a reasonable doubt. See Collins v. State, 901 S.W.2d 503, 506
(Tex. App.—Waco 1994, writ ref'd); also Dixon v. State, 918 S.W.2d 678 (Tex. App.—Beaumont
1996).
      Appellant sold cocaine to Madrid that was identical in color, consistency, and packaging as
that seized from the car. The cocaine was found under the back seat immediately behind
Appellant. The Appellant had .380 caliber ammunition on his person when arrested. Two .380
caliber semi-automatic pistols were recovered, one with drugs recovered from the back seat
immediately behind Appellant. The total cache was a large quantity of drugs consisting of over
three grams of "black tar" heroin and over one hundred grams of cocaine. The evidence is
sufficient to affirmatively link Appellant to the cocaine seized and to show Appellant exercised
care, control, management of the cocaine and that he knew it was unlawful, beyond a reasonable
doubt. Brown v. State, supra.
      Judgment of the trial court is affirmed.
 
                                                                               JOHN A. JAMES, JR.
                                                                               Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Justice James (Retired)
Affirmed
Opinion delivered and filed October 16, 1996
Do not publish 



60;                                         Justice

Before Justice Cummings,
          Justice Vance, and
          Justice James (Retired)
Affirmed
Opinion delivered and filed June 19, 1996
Do not publish